**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>&<br><br>STATE OF MAINE,<br><br>Plaintiffs,<br><br>v.<br><br>THE OPPORTUNITY ALLIANCE<br><br>Defendant. | No. |

**COMPLAINT**

NOW COME Plaintiffs, the United States of America (the "United States"), on behalf of its agency the U.S. Department of Health and Human Services ("HHS"), and the State of Maine ("Maine"), on behalf of its agency the Maine Department of Health and Human Services ("Maine DHHS") (together, "Plaintiffs"), and hereby file this Complaint pursuant to 31 U.S.C. § 3730(a) and 22 M.R.S. § 15, and in support thereof allege as follows:

**I.  SUMMARY OF ACTION**

1.   This is a civil action against The Opportunity Alliance ("Defendant") for violations of the federal False Claims Act and analogous Maine state law. From July 2018 through June 2021 ("Claims Period"), Defendant knowingly caused to be submitted false claims for payment to the federal Medicare program ("Medicare") and the State of Maine's MaineCare program ("MaineCare").

2.      Defendant sent misleading urine drug test requisition forms to clients' medical providers, and then used these forms in directing a third-party urine drug testing lab ("Laboratory A") to perform an excessive number of presumptive and definitive drug tests on certain of Defendant's clients. Such tests were not individually approved as medically necessary, were performed without a valid order from a medical provider, and were utilized by Defendant as a means of, in part, performing residential monitoring in violation of relevant MaineCare rules. Laboratory A billed MaineCare and Medicare for the urine drug tests performed on Defendant's clients and it received payment.

3.      The instant action accordingly seeks treble damages and civil penalties arising from false claims Defendant caused to be submitted to MaineCare and Medicare pursuant to the federal False Claims Act, 31 U.S.C. §§ 3729-3733, as well as Maine law, *see* 22 M.R.S. § 15.

## II.    JURISDICTION AND VENUE

4.      This Court has jurisdiction over the claims brought by the United States under the federal False Claims Act pursuant to 28 U.S.C. §§ 1331, 1345 and 31 U.S.C. § 3732(a).

5.      This Court further has jurisdiction over the claims brought by the State of Maine pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b).

6.      At all times relevant hereto, Defendant maintained its operations in Maine, with its headquarters located at 50 Lydia Lane in South Portland.

7. This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) both because Defendant resides in this District and because its acts proscribed under 31 U.S.C. § 3729 occurred in this District.

8. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b), 1391(c), because Defendant resides in this District and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## III. PARTIES

9. Plaintiff the United States is acting on behalf of its federal agency, HHS.

10. Plaintiff the State of Maine is acting on behalf of its state agency, Maine DHHS.

11. Defendant The Opportunity Alliance is a non-profit 501(c)(3) organization that serves as the Community Action Agency for Cumberland County, Maine.

12. During the timeframe relevant to this action, Defendant was enrolled in the MaineCare program and regularly submitted claims for payment to that program.

13. During the timeframe relevant to this action, Laboratory A was enrolled in the MaineCare and Medicare programs and regularly submitted claims for payment to those programs.

## IV. APPLICABLE LAW & REGULATIONS

### A. The MaineCare Program

14. Under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w, the United States shares with the states the cost of medical services provided to certain groups, including low-income families with dependent children, and to aged and

3

disabled individuals whose income and resources are insufficient to meet the cost of medical services.

15. Medicaid is a federally assisted grant program for the states. Medicaid enables the states to provide medical care and related services to needy individuals by directly paying providers of that care and services. Within broad federal rules, each state decides who is eligible for Medicaid, the services covered, and payment levels for services, and each state is responsible for creating policies and procedures regarding the administration of its program. In Maine, the state's Medicaid program is called "MaineCare."

16. MaineCare is a federal health care program paid by Maine state funds, as well as by grants made to states by HHS, by and through its sub-agency the Centers for Medicare & Medicaid Services ("CMS").

17. The portion of MaineCare paid by federal funds is known as the Federal Financial Participation, and differs by state and by fiscal year based on each state's *per capita* income. This percentage contribution is known as the Federal Medical Assistance Percentage.

18. Over the course of the timeframe relevant here, the average Federal Medical Assistance Percentage provided to the State of Maine was 64.09 percent, with the State of Maine funding the remaining 35.91 percent.

19. Maine DHHS administers the MaineCare program for the State of Maine on behalf of CMS.

20. MaineCare's regulations, policies, and guidelines require MaineCare-reimbursable services to be billed by providers using appropriate methodologies.

21. Presently, and during the timeframe at issue, MaineCare rules governing covered services, and the submission of claims and reimbursement for those services, are contained in the MaineCare Benefits Manual.

22. The MaineCare Benefits Manual also sets forth the requirements of provider participation.

23. Providers enrolled in MaineCare agree to submit claims for only medically reasonable and necessary services that are covered under the program, and to seek compensation to which the provider is legally entitled.

24. At all times relevant hereto, Defendant and Laboratory A were participating MaineCare providers and submitted claims for reimbursement to MaineCare.

**B.   The Medicare Program**

25. Medicare is a federal insurance program that provides health insurance to approximately fifty million Americans, most of them elderly or disabled. The Medicare Program is administered by CMS.

26. Medicare Part B is funded by insurance premiums paid by enrolled Medicare beneficiaries and by contributions from the Treasury. Eligible individuals may enroll in Part B to obtain benefits in return for payments of monthly premiums as established by HHS. *See* 42 U.S.C. §§ 1395o, 1395r. Medicare payments are often made directly to service providers, such as medical care providers, rather than to the patient (also known as the "beneficiary"). This occurs when the provider accepts assignment of the right to payment from the beneficiary. In such instances the provider submits its bill directly to Medicare for payment, which is what Laboratory A did in this case.

27. All participating providers in Medicare must comply with applicable federal statutes, regulations, and guidelines in order to be paid by Medicare Part B. A provider has a duty to have knowledge of the statutes, regulations, and guidelines regarding coverage for Medicare services.

28. Medicare makes clear in a variety of ways that participating providers may only bill for reasonable and necessary care. For example, the Medicare Benefit Policy Manual specifically excludes from coverage services that are not reasonable or necessary, stating "Items and services which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member are not covered." Medicare's statutory guidance also makes clear that the program only pays for services that are "reasonable and necessary for the diagnosis or treatment of illness or injury . . . ." 42 U.S.C. § 1395y(a)(1)(A).

29. At all times relevant, Laboratory A was a participating provider in Medicare.

30. Thus, at all times relevant, claims for payment to the Medicare Program for the urine drug testing of Defendant's clients included explicit or implicit claims that the services for which payment was sought were reasonable and necessary.

    **C.**     **The Federal False Claims Act**

31. The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), provides that a person is liable to the United States Government for three times the amount of damages that the Government sustains because of the act of that person, plus a civil penalty for each such claim, for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."

32. The False Claims Act also provides that a person is liable to the United States Government for three times the amount of damages which the Government sustains because of the act of that person, plus a civil penalty for each such claim, for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(G). Records and statements are material to a false or fraudulent claim where they have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

33. The False Claims Act defines the term "knowingly" under 31 U.S.C. § 3729(b)(1)(A) to mean that a person, with respect to information, "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information."

34. Pursuant to 31 U.S.C. § 3729(b)(1)(B), no proof of specific intent to defraud is required.

**D. Maine Law Civil Liability of Persons Making False Claims**

35. Maine law, 22 M.R.S. § 15, provides that:

> [a]ny person, firm, association, partnership, corporation or other legal entity who makes or causes to be made or presents or causes to be presented for payment or approval any claim upon or against the department or upon any funds administered by the department, knowing such claim to be materially false, fictitious or fraudulent, or who knowingly makes any false written statement or knowingly submits any false document material to a false, fictitious or fraudulent claim or who knowingly enters into any agreement, combination or conspiracy to defraud the department by obtaining the payment or approval of any materially false, fictitious or fraudulent claim or who knowingly makes or causes to be made a false written statement or record material to an obligation to pay or transmit money or property to the department or knowingly conceals or knowingly and improperly materially

7

avoids or materially decreases an obligation to pay or transmit money or property to the department is, in addition to any criminal liability that may be provided by law, subject to civil suit . . . [and] penalties. . . .

36.     This Court, pursuant to 31 U.S.C. § 3732(b), has jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under Section 3730 of Title 31.

### V.     FACTUAL BACKGROUND

37.     Defendant operates Morrison Place, a residential treatment program for homeless individuals who have a major mental illness and/or a substance use disorder. During the timeframe relevant to this action, all Morrison Place clients were enrolled in MaineCare and/or Medicare, and Defendant operated Morrison Place pursuant to Section 97 of the MaineCare Benefits Manual.  In 2018, Defendant entered into an agreement with Laboratory A to conduct urine drug tests of all Morrison Place clients. Pursuant to this agreement, Laboratory A would bill MaineCare and Medicare directly for any urine drug tests performed on Morrison Place clients; Laboratory A would not bill Morrison Place for any urine drug testing-related services.

38.     In order to perform the urine drug tests on the Morrison Place clients, a qualified health care professional was required to sign a urine drug test requisition form after determining that the testing was medically necessary. Pursuant to MaineCare and Medicare rules, all urine drug testing must be medically necessary in order to be eligible for reimbursement.

39.     Defendant sent the test requisition form to a client's primary care provider or other providers who previously had treated the client. After the client's provider

8

signed the test requisition form for the client, Defendant would transmit the form to Laboratory A so that testing of the client could begin.

40. However, neither the test requisition form Defendant provided to the client's provider nor a cover letter that sometimes accompanied the test requisition form indicated that the requisition would be treated as a "standing order," pursuant to which three drug tests would be ordered each week, without exception and without regard for the client's individualized treatment needs, for up to a full year.

41. Additionally, the test requisition form that was used as a standing order called for presumptive as well as definitive (Liquid Chromatography/Tandem Mass Spectrometry, or "LC-MS") drug testing. Presumptive tests are relatively inexpensive screening" tests that detect the presence or absence of a drug or drug class. Definitive tests are more precise and expensive, and are utilized to determine the concentration of a drug or metabolite in urine, as well as to determine the presence of certain drugs that are not reliably detected with presumptive screens.

42. Because of the costs associated with definitive testing, MaineCare rules prohibit standing orders for definitive testing. MaineCare allows for standing orders for presumptive testing, but such orders must clearly state the frequency of the testing in the order, and are only valid for six months.

43. Accordingly, even if the test requisition forms Defendant sent to its clients' providers included language regarding the frequency of testing and clearly indicated that the order was a standing order—which they did not—it would have been inappropriate to use such an order to perform definitive tests. However, this is exactly what the test requisition forms were used for. Furthermore, they were used to justify

presumptive and definitive test billing for up to one year after the order was signed, far in excess of the six-month maximum for such orders under MaineCare rules.

44. Along with failing to indicate that the test requisition form would be used as a standing order, Defendant failed to inform clients' providers that the form was a "blanket order"—a standing order that calls for testing of the same panel of substances for every client of the program, without any individualization based on a client's substance use history, medical history, presenting symptoms, or individualized needs. Urine drug tests ordered by blanket orders are deemed "non-covered services" by CMS, as they are not reasonable and necessary services.

45. Defendant utilized these drugs tests in part for residential monitoring purposes, which is a prohibited purpose under relevant MaineCare rules. This was not disclosed to the providers who signed the test requisition forms.

46. From July 2018 through June 2021, Laboratory A billed MaineCare and/or Medicare for urine drug tests it performed on Morrison Place clients pursuant to the test requisition forms described above. Over 3,500 urine drug testing claims were submitted to MaineCare and Medicare based on these orders, and a total of $194,604.51 was paid to Laboratory A on these submitted claims.

47. Because the test requisition forms Defendant provided to clients' providers failed to indicate that the requisition would be treated as a "standing order," pursuant to which three presumptive and definitive tests would be ordered each week, without exception and without regard for the client's individualized treatment needs; because the length of time the orders were used as standing orders; because of the types of tests the "standing orders" were used to authorize; because the orders served as non-individualized "blanket orders" that applied to every client of Morrison Place; and

because these tests were utilized by Defendant as a means of performing residential monitoring (which was not disclosed to the signing provider), these urine drug tests were performed without a provider order, were grossly excessive, not medically necessary, and were conducted in violation of relevant MaineCare and Medicare rules.

## VI.   LEGAL CLAIMS

### Count I: Presenting False or Fraudulent Claims

(United States; 31 U.S.C. §§ 3729(a)(1)(A), 3730(a))

48.   Paragraphs 1 through 48 are realleged as though fully set forth herein.

49.   Defendant, by sending misleading urine drug test requisition forms to clients' medical providers, and then using these forms in directing Laboratory A to perform a grossly excessive number of presumptive and definitive drug tests on certain of Defendant's clients, knowingly caused to be submitted by Laboratory A false or fraudulent claims for payment or approval in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

50.   Because of Defendant's acts, the United States sustained damages in an amount to be determined at trial, and therefore is entitled to treble damages under the False Claims Act, plus civil penalties for each violation.

### Count II: Maine Law Civil Liability of Persons Making False Claims

(Maine; 22 M.R.S. § 15)

51.   Paragraphs 1 through 51 are realleged as though fully set forth herein.

52.   Defendant, by causing to be submitted by Laboratory A claims to MaineCare for services that were not reasonably medically necessary, caused to be made or presented or caused to be presented for payment or approval claims upon or against Maine DHHS or upon funds administered by Maine DHHS, knowing such claims to be

materially false, fictitious or fraudulent, or knowingly made false written statements or knowingly submitted false documents material to false, fictitious or fraudulent claims or knowingly entered into an agreement, combination or conspiracy to defraud Maine DHHS by obtaining the payment or approval of any materially false, fictitious or fraudulent claim, in violation of 22 M.R.S. § 15.

53. Because of Defendant's acts, Maine sustained damages in an amount to be determined at trial, and therefore is entitled to threefold damages under 22 M.R.S. § 15, plus civil penalties of not less than $2,000 for each violation.

## Count III: Unjust Enrichment

(Common Law; 31 U.S.C. § 3732(b))

54. Paragraphs 1 through 54 are realleged as though fully set forth herein.

55. Defendant was unjustly enriched through its conduct as detailed herein.

56. The circumstances of the matter are such that, in equity, Defendant is liable to account for and pay such amounts, which are to be determined at trial.

**VII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs the United States and Maine request that judgment be entered in their favor and against Defendants as follows:

A. On Count I (Violations of 31 U.S.C. § 3729(a)(1)(A) and (B)), for treble the United States' damages, in an amount to be determined at trial, plus civil penalties for each false claim presented, together with all such relief as may be just and proper;

B. On Count II (Violations of 22 M.R.S. § 15), for threefold Maine's damages, in an amount to be determined at trial, plus civil penalties for each false claim presented, together with all such relief as may be just and proper;

  C. On Counts I and II for an award of fees and costs pursuant to 31 U.S.C. § 3729 and 22 M.R.S.A. § 15;

  D. On Count III (Unjust Enrichment), for an accounting and for the amounts by which Defendant was unjustly enriched, in an amount to be determined at trial, together with costs and interest; and

  E. All other relief this Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

The United States and Maine demand a jury trial in this case pursuant to Federal Rule of Civil Procedure 38(b) of all claims and issues so triable.

Dated: May 22, 2025    Respectfully Submitted,

    CRAIG M. WOLFF
    Acting United States Attorney

    By: */s/ James D. Concannon*
    James D. Concannon
    Assistant United States Attorney
    U.S. Attorney's Office
    100 Middle Street
    Portland, ME 04101
    (207) 780-3257
    James.concannon@usdoj.gov
    *On behalf of the United States*

DATED: May 22, 2025    AARON M. FREY
    Attorney General for the State of Maine

    BY: */s/ John P. Burke*
    John P. Burke
    Assistant Attorney General
    Healthcare Crimes Unit
    6 State House Station
    Augusta, ME 04333
    (207) 626-8804
    John.Burke@maine.gov
    *On behalf of the State of Maine*