# SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the United States Department of Health and Human Services ("HHS") (collectively, the "United States"), the State of Maine, on behalf of its agency the Maine Department of Health and Human Services ("Maine DHHS") (collectively, "Maine"), and Defendant The Opportunity Alliance ("Defendant"), (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. Defendant operates Morrison Place, a residential treatment program for homeless individuals who have a major mental illness and/or a substance use disorder. During the timeframe relevant to this action, all Morrison Place clients were enrolled in MaineCare and/or Medicare, and Defendant operated Morrison Place pursuant to Section 97 of the MaineCare Benefits Manual. Residents of Morrison Place are admitted based on MaineCare's eligibility and approval process.

B. On May 22, 2025, the United States and Maine filed an action in the United States District Court for the District of Maine, captioned *United States v. The Opportunity Alliance*, 2:25-cv-00266-JCN (the "Civil Action").

C. The United States and Maine contend that, from July 2018 through June 2021, Defendant caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare") and the MaineCare Program, 42 U.S.C. §§ 1396-1396w-5 ("MaineCare"), which is Maine's Medicaid program.

1

D. The United States and Maine contend that they have certain civil claims against The Opportunity Alliance arising from the submission of false claims for payment to Medicare and MaineCare, specifically the submission of claims by a third-party laboratory for payment for the urine drug testing of Morrison Place clients by that third-party laboratory from July 2018 through June 2021. The authority to test these clients was based on a test requisition form that Defendant sent to the client's primary care provider (or another provider who previously had treated the client) for that provider's signature. However, neither the test requisition form Defendant provided to the client's provider nor the cover letter that sometimes accompanied the test requisition form indicated that the requisition would be treated as a standing order, pursuant to which three tests would be ordered each week, without exception and without regard for an individual client's individualized treatment needs, for up to a full year. Such tests were therefore performed without a provider order, were excessive, not individually determined by a provider to be medically necessary, and were utilized in part by Defendant as a means of performing residential monitoring in violation of relevant MaineCare rules. That conduct is referred to below as the "Covered Conduct."

E. This Settlement Agreement is neither an admission of liability by Defendant nor a concession by the United States that its claims are not well-founded.

F. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. Defendant shall pay to the United States Three Hundred Forty-Six Thousand, Three Hundred Sixty-Nine Dollars and Eighty-Seven Cents ($346,369.87)

("Settlement Amount"), of which $192,427.71 is restitution, no later than 30 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the District of Maine. The Financial Litigation Unit of the Office of the United States Attorney for the District of Maine shall allocate such funds between federal and state payees as follows:

      a.      $233,801.93 to the United States, which is the sum of $200,904.45 representing 64.09%, the average over the period of the Covered Conduct of the United States' Federal Medical Assistance Percentage share of $313,472.39, the amount due for false claims to MaineCare, plus $32,897.48, the amount due for false claims to Medicare (the "Federal Settlement Amount"); and

      b.      $112,567.94 to the State of Maine, representing 35.91%, the average over the period of the Covered Conduct of the remaining State Medical Assistance Percentage share of $313,472.39, the amount due for false claims to MaineCare (the "State Settlement Amount").

2. Subject to the exceptions in Paragraph 4 (concerning reserved claims) below, and conditioned upon the United States' receipt of the Federal Settlement Amount, the United States releases Defendant from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

3. Subject to the exceptions in Paragraph 4 (concerning reserved claims) below and conditioned upon Defendant's full payment of the State Settlement Amount, Maine releases Defendant from any civil or administrative monetary claim Maine has

for the Covered Conduct under 22 M.R.S.A. § 15 or the common law theories of payment by mistake, unjust enrichment, and fraud.

4. Notwithstanding the releases given in Paragraphs 2 and 3 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States and Maine are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code) or Title 36, Maine Revised Statutes (Maine Tax Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

    d. Any civil or administrative liability that any person or entity has or may have to the United States (or its agencies), Maine (or its agencies), or to individual consumers or state program payors under any statute, regulation, or rule not expressly covered by the releases in Paragraphs 2 and 3 above, including without limitation, any and all of the following claims: (1) federal or state antitrust violations; and (2) claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws;

    e. Any liability to the United States (or its agencies) or Maine (or its agencies) for any conduct other than the Covered Conduct;

    f. Any liability based upon obligations created by this Agreement; and

    g. Any liability of individuals.

5. Defendant waives and shall not assert any defenses Defendant may have to any criminal prosecution or administrative action relating to the Covered Conduct that

may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

6. Defendant fully and finally releases the United States and Maine, and their respective agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendant has asserted, could have asserted, or may assert in the future against the United States or Maine, or their respective agencies, officers, agents, employees, and servants related to the Covered Conduct and the United States' or Maine's investigation and prosecution thereof.

7. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Defendant agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

8. Defendant agrees to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendant, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit and civil investigation of the matters covered by this Agreement;

(3) Defendant's investigation, defense, and corrective actions undertaken in response to the United States' audit and civil investigation in connection with the matters covered by this Agreement (including attorneys' fees);

(4) the negotiation and performance of this Agreement; and

(5) the payment Defendant makes to the United States pursuant to this Agreement,

are unallowable costs for government contracting purposes and under Medicare, MaineCare or another Medicaid Program, the TRICARE Program, and the Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

      b.    <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Defendant, and Defendant shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendant, or any other related corporate entity or its subsidiaries or affiliates to the Medicare, MaineCare or other Medicaid, TRICARE, or FEHBP Programs.

      c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendant further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers,

and/or contractors, and MaineCare, other Medicaid, and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendant, or any related corporate entity or its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. Defendant agrees that the United States, at a minimum, shall be entitled to recoup from Defendant any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendant, or any related corporate entity or its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Defendant, or any related corporate entity or its subsidiaries or affiliates' cost reports, cost statements, or information reports.

      d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine the books and records of Defendant, or any other related corporate entity to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

9.      Defendant agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon

reasonable notice, Defendant shall encourage, and agrees not to impair, the cooperation of any directors, officers, and employees of Defendant or any other related corporate entity, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendant further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that Defendant, or any other related corporate entity has undertaken, or that has been performed by another on its behalf.

10. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 11 (waiver for beneficiaries paragraph), below.

11. Defendant agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

12. Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

13. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

14. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

15. This Agreement is governed by the laws of the United States. The exclusive venue for any dispute relating to this Agreement is the United States District Court for the District of Maine. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

16. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

17. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

18. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

19. This Agreement is binding on Defendant's successors, transferees, heirs, and assigns.

20. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

21. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

CRAIG M. WOLFF
Acting U.S. Attorney for the District of Maine

DATED: May 23, 2025    BY: _____
JAMES D. CONCANNON
Counsel for the United States of America
Assistant U.S. Attorney
100 Middle Street
East Tower, 6th Floor
Portland, Maine 04101
(207) 780-3257
James.Concannon@usdoj.gov
*On behalf of the United States*

DATED: May 23, 2025    BY: _____
SUSAN E. GILLIN
(Digitally signed by SUSAN GILLIN, Date: 2025.05.28 09:02:17 -04'00')
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health and Human Services
*On behalf of HHS*

10

**THE STATE OF MAINE**

|  |  |
|---|---|
| | AARON M. FREY |
| | Attorney General for the State of Maine |
| DATED: May 23, 2025 | BY: _____ |
| | JOHN P. BURKE |
| | Assistant Attorney General |
| | Healthcare Crimes Unit |
| | 6 State House Station |
| | Augusta, ME 04333 |
| | (207) 626-8804 |
| | John.Burke@maine.gov |
| | *On behalf of the State of Maine* |

**DEFENDANT THE OPPORTUNITY ALLIANCE**

DATED: May 23, 2025

BY: _____
PETER G. CALLAGHAN, ESQ.
Preti, Flaherty, Beliveau & Pachios, Chartered, LLP
57 North Main Street
Concord, NH 03301
(603) 410-1500
pcallaghan@preti.com
*On behalf of The Opportunity Alliance*